**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Zachary A. Myers
Assistant United States Attorney
Zachary.Myers@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4848
MAIN: 410-209-4800
FAX: 410-962-0716

March 4, 2016

David W. Fischer, Esq.
Law Offices of Fischer & Puts, P.A.
Suite 300, Empire Towers
7310 Ritchie Highway
Glen Burnie, MD 21061



FILED ___ ENTERED
LODGED ___ RECEIVED
AUG - 5 2016
AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

Re:   *United States v. Robert P. Kramer*, Criminal No. JFM-16-0028.

Dear Mr. Fischer:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by close of business on **March 25, 2016**, it will be deemed withdrawn.

The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to waive indictment and plead guilty to a one count Criminal Information charging him with Distribution of Child Pornography, in violation of Title 18, United States Code, Section 2252(a)(2). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a. On or about the date listed in the Information, the Defendant knowingly distributed a visual depiction;

   b. The depiction was shipped or transported in and affecting interstate or foreign commerce by any means, including computer;

   c. Producing the visual depiction involved using a minor engaged in sexually explicit conduct;

1

      d.      The depiction is of a minor engaged in sexually explicit conduct; and

      e.      The Defendant knew that at least one performer in the visual depiction was a minor and knew that the depiction showed the minor engaged in sexually explicit conduct.

### Penalties

3.      The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: imprisonment for not less than five (5) years and not more than twenty (20) years, followed by a term of supervised release of not less than five years and not more than life and a fine of up to $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to Title 18, United States Code, Section 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to Title 18, United States Code, Sections 2259, 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to Title 18, United States Code, Section 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4.      **Sex Offender Registration:** The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

5.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

      a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

      b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to

confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

  d.  The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

  e.  If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

  g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

  h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

  i.  The Defendant further waives any and all motions, defenses, probable cause determinations, objections which the Defendant could assert to the Information or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

  j.  If the Defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the Defendant for all charges as to which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, the Defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings.

## Advisory Sentencing Guidelines Apply

6.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at Title 18, United States Code, Sections 3551-3742 (excepting Title 18, United States Code, Sections 3553(b)(1) and 3742(e)) and Title 28, United States Code, Sections 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.  This Office and the Defendant understand, agree and stipulate to the following Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

   a.  **Base Offense Level:** The base offense level is twenty-two (22) pursuant to U.S.S.G. §2G2.2(a)(2).

   b.  **Minors under Twelve:** Pursuant to U.S.S.G. §2G2.2(b)(2), there is a two (2) level increase because the depictions involved prepubescent minors or minors under the age of twelve (12).

   c.  **Distribution:** Pursuant to U.S.S.G. §2G2.2(b)(3)(B), there is a five (5) level increase because the offense involved distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain.

   d.  ~~**Sadomasochistic Material:** Pursuant to U.S.S.G. §2G2.2(b)(4), there is a four (4) level increase because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence.~~

   e.  **Use of a Computer:** Pursuant to U.S.S.G. §2G2.2(b)(6), there is a two (2) level increase because the distribution involved the use of a computer.

   f.  **More than 600 Images:** Pursuant to U.S.S.G. §2G2.2(b)(7)(D), there is a five (5) level increase because the number of images involved in the offense and its relevant conduct is more than 600.

8.  This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office intends to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional 1-level decrease, assuming your client continues to acceptance of personal responsibility for his conduct up to, and through, his sentencing. This Office may oppose any adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.


9. Thus, the final anticipated adjusted offense level is 37.

10. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

11. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines (other than that stated in ¶ 8. supra) will be raised or are in dispute.

12. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct. Both parties reserve the right to recommend any lawful sentence using the factors set forth in 18 U.S.C. § 3553(a).

### Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the Information or to the Court's entry of judgment against the Defendant, imposition of sentence upon the Defendant consistent with this agreement.

    d. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    e. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

14. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1, (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

15. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulations set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulations, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw the Defendant's guilty plea, and will remain bound to fulfill all of the Defendant's obligations under this agreement. The Defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Forfeiture

16. The Defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on June 16, 2015, and further agrees to take whatever steps are necessary to pass clear title to those properties to the United States, including, *but not limited to*:

   a. An iPhone 5S, Model A1553, IMEI 352006066760712, S/N DX4NLUBVFNJJ; and SIM card;

   b. An HTC 4G LTE Model ADR6400L, S/N HT1485007833, IMEI 990000326359272, and SIM card;
   c. A Sony Erickson Model T637, S/N PY7A1031012 4170B-A1031012, and SIM card;
   d. A SYX Cool Master Tower, S/N 10722173;
   e. A Toshiba Tecra laptop, S/N 63015016VU;
   f. A Seagate Barracuda 2TB hard drive, S/N 9WM7HZZK; and,
   g. A Patriot Memory 64GB thumb drive.

### Restitution

17. For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§ 2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

### Collection of Financial Obligations

18. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

19. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

20. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Entire Agreement

21. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete

plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By:  *[signature]*
Zachary A. Myers
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_____     *[signature]* Robert P. Kramer
Date                                        Robert P. Kramer

I am Mr. Kramer's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

6/8/16                                *[signature]*
Date                                        David W. Fischer, Esq.

## EXHIBIT A
## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that the following facts are true, and if this case had proceeded to trial, the government would have proven them beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant, Robert P. Kramer, age 51, lived on Long Meadow Way in Arnold, Anne Arundel County, Maryland. Kramer is a former marine and was employed by Telecommunications Systems Inc., a subcontractor to Trident Systems, Inc., a defense contracting company based in Fairfax, VA.

### The Network and the Website

"The Website" was an online bulletin board, the primary purpose of which was the advertisement and distribution of child pornography. The Website required its users to continually share child pornography in order to gain and keep membership.

The Website operated on a computer network, hereinafter "the Network," available to Internet users that is designed specifically to facilitate anonymous communication over the Internet. In order to access that Network, a user must install computer software that is publicly available, either by downloading software to the user's existing web browser, downloading free software available from the network's administrators, or downloading a publicly-available third-party application. Using the Network prevents someone attempting to monitor an Internet connection from learning what sites a user visits and prevents the sites the user visits from learning the user's physical location. Because of the way the Network routes communication through other computers, traditional IP identification techniques are not viable. Websites that are accessible only to users within the Network can also be set up within the Network. The Website is just such a website. A user could only reach websites like the Website if the user is operating

1

in the Network.

The Website was organized by different topical areas or forums. For example, "Application Rules" or "Hardcore" would have individual threads containing posts that one would expect topically conform to the forum heading. A review of the initial forums accessible on the Website prior to registering an account with the website revealed a post entitled "Application Rules," which contained the following instructions specifying that an application posting was required to contain images/videos depicting preteens engaging in "hardcore" sexual activity, needed to be of a certain file size/volume, and to be reviewed and approved by a site administrative team member.

Another forum on the Website that was available prior to registering an account contained a post describing posting activity rules, which specified that members were required to contribute postings to the site at least once every 30 days which contained images/videos depicting child pornography or erotica, links or passwords to websites containing the same, or assistance to site users advertising or distributing child pornography. The post articulated that postings depicting late teenagers, older than 14-15 years old, did not count as such a contribution.

Users could become "VIP" members of the website with the approval of Website administrators. VIP members were required to contribute at least once every 30 days.

### KRAMER's Posting of Child Pornography to the Website

KRAMER, using an online pseudonym, was a VIP member of the Website. Between on or about April 29, 2013, and on or about December 9, 2014, KRAMER made a total of approximately 69 postings to the Website.

On or about June 7, 2014, KRAMER made a post on the Website entitled "More cute

webcams." This post contained preview images, hyperlinks to external file storage websites, and a password to open the advertised files stored on the external websites. Four of the files listed in this post were:

a. "ddayrememb_6015081_12448697.jpg": This file contained 20 images, five of which depicted a Caucasian pre-pubescent girl, nude from the waist down, posing to expose her vagina.

b. "dday_remembered.7z": This file contained a video file depicting a Caucasian pre-pubescent girl posing to expose her vagina using her fingers to spread her vagina open.

c. "historyofr_5199317_12448704.jpg": This file contained 20 images, 18 of which depicted a Caucasian pre-pubescent girl partially clothed posing to expose her chest and vagina.

d. "history_of_russia.7z": This file contained a video file depicting a Caucasian pre-pubescent girl dancing nude in a bathroom setting, exposing her chest and genitalia and inserting what appears to be toilet paper into her vagina and anus.

A search warrant was authorized by a U.S. Magistrate for **KRAMER's** home and executed on or about June 16, 2015. **KRAMER** was in possession of digital devices and storage media capable of storing in excess of 3TB of data. Portions of the data stored by **KRAMER** on these devices were secured by a variety of technical means, including sophisticated encryption and use of "virtual machines" or "shadow drives" to conceal the existence of data.

**KRAMER's** devices contained many videos and images of minors engaged in sexually explicit conduct, including images of children being made to engage in anal sex and bestiality.

During execution of the search warrant, **KRAMER** waived his *Miranda* rights and

agreed to speak with investigators. During the interview, **KRAMER** admitted that he was a member of the Website, and that he uploaded files of child pornography to other users of the Website in order to increase his status on the site. **KRAMER** did not recall the specific child pornography files that he uploaded, and stated that he deleted them from his system after uploading them. **KRAMER** also stated that he engaged in peer-to-peer trafficking of pornography.

After initially stating that his sexual interest was in girls aged 18 and over, **KRAMER** later stated that he has a sexual preference for teenage girls ages 15 to 17. **KRAMER** admitted that some of his pornography depicted girls under 18 and as such was "probably" illegal.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_____                                     _____
Date                                                                                  Robert P. Kramer

I am Robert P. Kramer's attorney. I have carefully reviewed this statement of facts with him.

_____
David W. Fischer, Esq.